859 F.2d 150
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
QUALLA HOUSING AUTHORITY, Plaintiff-Appellee,
v.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,
Defendant-Appellant,
and
Aetna Casualty & Surety Company, Defendant.
 No. 88-1514.
 United States Court of Appeals, Fourth Circuit.
 Argued June 6, 1988.
Decided Sept. 9, 1988.
 
 Jon B. McPhail (B. Morris Martin, Hilliard V. Castilla, McKenzie & McPhail, Boyd B. Massagee, III, Prince, Youngblood & Massagee on brief) for appellant.
 Gary Edward Kirby for appellee.
 Before K.K. HALL, MURNAGHAN, and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 National Union Fire Insurance Company appeals a grant of summary judgment in favor of Qualla Housing Authority in Qualla's action seeking coverage under a fire insurance policy. We affirm.
 
 
 2
 Qualla is chartered by the Eastern Band of Cherokee Indians pursuant to regulations promulgated by the United States Department of Housing and Urban Development. See generally 24 C.F.R. Secs. 905.401, et seq. (1987). It is designed to allow Eastern Band's participation in the Mutual Help Homeownership Occupancy Program whereby eligible participants are given the opportunity to become homeowners after making specified contributions to the development of certain property. The program functions by allowing Eastern Band property owners to assign their interests to Eastern Band, which then executes a long-term lease of the property to Qualla. Qualla constructs houses on the property and the participant is allowed occupancy under a Mutual Help and Occupancy Agreement. The participant can ultimately become the homeowner after a specified number of monthly payments and by meeting other terms of the agreement such as maintenance of the property.
 
 
 3
 Vicki Cruz participated in this program by assigning her interest in approximately one acre of land to Eastern Band. After Qualla entered into a lease for the property, it constructed a house on the property which Vicki and Darrell Cruz occupied under a Mutual Help and Occupancy Agreement.
 
 
 4
 Both Qualla and the Cruzes obtained insurance contracts on the property. The Cruzes' policy, secured through Allstate Insurance Company, provided coverage of $65,000.00 for the house. Qualla's policy, issued by National Union, insured its interest in multiple houses and provided for an aggregate limit of $10,000,000.00 per occurrence. Endorsement number one to the contract issued by National Union provided, in pertinent part:
 
 
 5
 f. Other insurance clause. 'It is expressly stipulated and made a condition of this Policy, that in the event of loss this coverage is excess over any other coverage, whether collectable or not.'
 
 
 6
 On March 17, 1984, the house occupied by the Cruzes was destroyed by fire. The Cruzes filed a claim under their policy with Allstate, but it was denied on the basis that they lacked an insurable interest in the residence. After National Union refused payment on the Qualla policy based upon the Cruzes' "other coverage," Qualla brought suit against National Union for proceeds under that policy.
 
 
 7
 The parties entered into a stipulation to the pertient facts, including an agreement that the cost of reconstruction of the house would be $57,120.00. On cross motions for summary judgment the district court found that the agreement between Qualla and the Cruzes constituted a long-term land contract in which each party possessed a separate interest in the land. Due to these distinct interests the court held that the Allstate policy purchased by the Cruzes did not constitute "other coverage" as provided in the National Union endorsement.
 
 
 8
 National Union contends that the endorsement plainly refers to "any other coverage" and that a literal reading of the provision requires that its policy operate as excess coverage over the Allstate policy covering the same property. It asserts that the district court essentially rewrote the endorsement to provide for excess coverage only when there existed "any other insurance obtained by the insured." Qualla contends that the Cruzes were simply tenants under the Mutual Help and Occupancy Agreement and were therefore not covered by the Allstate homeowners policy. Alternatively, Qualla agrees with the district court's finding that the Cruzes' interest was akin to a long-term contract satisfying the general rule that excess coverage will not apply where the other insurance clause does not expressly state that policies covering separate interests are included. Under either interpretation National Union is liable.
 
 
 9
 National Union argues that the endorsement must be read to include all other insurance on the property because otherwise there would be no incentive for Qualla to purchase other insurance. It also argues that equitably it should not be responsible for coverage when Allstate is the party whose conduct is unreasonable based upon its failure to pay the Cruzes under that policy.
 
 
 10
 First, we know of no reason why National Union did not attempt to bring Allstate into this lawsuit. Moreover, National Union's equitable plea is weakened by noting the fact that should they prevail, Qualla would be denied coverage under its policy by the unilateral act of the Cruzes. Qualla would never be in the position to know whether its tenants (or the mortgagor) had purchased separate insurance on a dwelling. See Murdaugh v. Traders & Mechanics Ins. Co., 218 S.C. 299, 62 S.E.2d 723 (1950).
 
 
 11
 AFFIRMED.